**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1975**

_____

KAITLYN TRIMBLE, individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

ENTRATA, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge.  (1:24−cv−03710−RDB)

_____

Argued:  May 6, 2026                                          Decided:  August 11, 2026

_____

Before NIEMEYER, THACKER, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge Niemeyer joined.  Judge Rushing wrote a dissenting opinion.

_____

**ARGUED:**  Jaime Ann Santos, GOODWIN PROCTER LLP, Washington, D.C., for Appellant.  Benjamin Howard Carney, GORDON, WOLF & CARNEY, CHTD., Hunt Valley, Maryland, for Appellee.  **ON BRIEF:**  Jesse Lempel, Boston, Massachusetts, Sabrina M. Rose-Smith, GOODWIN PROCTER LLP, Washington, D.C., for Appellant. Richard S. Gordon, GORDON, WOLF & CARNEY, CHTD., Hunt Valley, Maryland, for Appellee.

_____

THACKER, Circuit Judge:

Software company Entrata, Inc. ("Appellant") operated an online portal that Kaitlyn Trimble ("Appellee") utilized to pay her residential rent between 2023 and 2024. Appellant charged users a convenience fee each time they used the portal to pay their rent. Appellee, on behalf of herself and all others similarly situated, sued Appellant seeking to recover the convenience fees, alleging that Appellant is an unlicensed collection agency.

Appellant moved to compel arbitration. The district court declined to compel arbitration, finding that the arbitration provision contained in the portal's terms and conditions, which are hyperlinked on the rent payment page, was unenforceable for lack of mutual consideration. The district court concluded that the parties' arbitration agreement was rendered illusory under Maryland law due to a modification clause which allowed Appellant to change the agreement without notice at its sole discretion.

On appeal, Appellant argues that the modification clause does not render illusory its mutual promise to arbitrate because it "did not give [Appellant] the power to impose such changes unilaterally at any time," as any changes made "could not take effect unless and until" Appellee returned to use the online portal and thereby agreed to the changes. Appellant's Opening Br. at 2, 10.

For the reasons that follow, we agree with the district court and conclude that that the arbitration agreement is unenforceable for lack of consideration because Appellant's promise to arbitrate is illusory pursuant to Maryland law.

Therefore, we affirm.

2

I.

A.

Terms and Conditions

Appellant operates "ResidentPortal," an online payment management portal that landlords and property managers may use to collect residential rents. While residing in Lynn Hill Apartments, a Maryland apartment complex, Appellee utilized ResidentPortal to pay her rent on at least six occasions between 2023 and 2024.

Each of these payments consisted of a rent charge and a convenience fee collected by Appellant. Before Appellee could finalize these payments, she was required to check a box at the bottom of the screen that stated, "I agree to the fees listed and have read and accept the terms & conditions. Terms and Conditions." J.A. 79.[1] The second "Terms and Conditions" appeared in blue font and hyperlinked to Appellant's operative terms and conditions (hereinafter, "Terms"). Although users could not finalize their rent payments until they had checked the box indicating their agreement to the Terms, they were not required to click on, scroll through, or otherwise actually review the hyperlinked Terms.

As relevant to this appeal, the Terms provided, "[t]hese terms and conditions of use are a binding contract between [Appellant], the legal entity that owns or manages the property displayed on this website . . . and you." J.A. 88, 109, 129.[2] The Terms then

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] The record includes three versions of the Terms. *See* J.A. 129–145 (version of the Terms in effect between May 10, 2023–April 23, 2024); *id.* at 109–127 (version of the (Continued)

3

stated, "[b]y using [ResidentPortal], [y]ou agree to the following," *id.*, and provided three provisions of particular relevance to the appeal, titled: (1) "Dispute Resolution," *id.* at 100, 121, 141 (hereinafter, the "Arbitration Provision"); (2) "Changes to the Agreement," *id.* at 90, 111, 131 (hereinafter, the "Change Clause"); and (3) "Agreement to Deal Electronically; Electronic Communications and Notices," *id.* at 89, 110, 129 (hereinafter, the "Notices Clause").

Pursuant to the Arbitration Provision, "[a]ny controversy or claim arising out of or relating to the use of the services on this site, the relationship resulting from the use of such services, or a breach of any duties hereunder will be settled by Arbitration." J.A. 100, 121, 141. The Change Clause, which appears several pages before the Arbitration Provision, provided that users "are bound by the version of this Agreement that is in effect on the date of [their] visit [to ResidentPortal]. This Agreement may change from time to time, so please review it when you visit [ResidentPortal]." *Id.* at 90, 111, 131. And, finally, the Notices Clause set forth, in relevant part:

> Except as otherwise provided in these Terms, we will give you any notices regarding [ResidentPortal] by posting them on [ResidentPortal] . . . You must check [ResidentPortal] for notices, and you will be considered to have received a notice when it is posted on [ResidentPortal], or when sent by us via electronic mail, whether or not received by you.

*Id.* at 89, 110, 130.

---

Terms in effect between April 24, 2024–October 15, 2024); and *id.* at 88–107 (version of the Terms in effect after October 16, 2024).

4

B.

Motion to Compel Arbitration

On October 29, 2024, Appellee, individually and on behalf of all others similarly situated, filed a class action lawsuit against Appellant in Maryland state court. The Complaint asserts claims pursuant to the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. §§ 7–101 et seq.; the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14–201 et seq.; the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-301(14)(iii), 13-303(5); an equitable claim for money had and received; unjust enrichment; and negligence. The Complaint seeks declaratory relief, injunctive relief, and damages on behalf of a class defined as "[a]ll persons who paid a Convenience Fee to [Appellant] in connection with [Appellant's] collection of charges arising from residential real property located in Maryland." J.A. 22.

The Complaint alleges that Appellant acted as an unlicensed rent collection agency and improperly collected convenience fee payments in violation of Maryland law. Specifically, Appellee alleges that Appellant improperly charged her convenience fees as follows:

5

- $6.80 on July 6, 2023;

- $6.95 August 2, 2023;

- $6.95 on August 21, 2023;

- $6.95 on February 21, 2024;

- $7.95 on July 1, 2024;

- $7.95 on July 11, 2024.

J.A. 39–41.[3]

Appellant removed the action to federal court pursuant to the Class Action Fairness

Act, 28 U.S.C. §§ 1332(d), 1453. Appellant subsequently moved to stay proceedings and

compel arbitration based on the Arbitration Provision. Appellee responded in opposition,

arguing that no agreement to arbitrate was ever formed, and that even if one were formed,

it is unenforceable. Specifically, she argued that under Maryland law, formation of a valid

agreement to arbitrate requires separate consideration, typically in the form of a mutual

promise to arbitrate. She further argued that under the Change Clause, Appellant retained

a unilateral right to alter the parties' agreement without notice -- including a right to

withdraw its promise to arbitrate, thereby rendering Appellant's purported promise to

arbitrate illusory.

---

[3] The parties dispute the exact dates of the payments and the number of payments. Appellee alleges that she made six one-time payments as indicated above. But Appellant asserts that its records indicate that Appellee made seven one-time payments, one on each of the following dates: June 26, 2023; July 26, 2023; August 2, 2023; August 23, 2023; February 21, 2024; July 2, 2024; and July 11, 2024. However, this factual dispute is not material to the appeal, which instead turns on the language of the Terms.

The district court denied Appellant's motion to stay proceedings and compel arbitration. Relying on our recent decision in *Johnson v. Continental Fin. Co.*, 131 F.4th 169 (4th Cir. 2025), the court held that no agreement to arbitrate was formed.

As an initial matter, the district court determined that the Terms constituted a "browsewrap" agreement. As the district court explained, a "browsewrap" agreement "does not require a user to click a box or button indicating that he or she agrees to certain terms to use the website, but instead attempts to bind the user to hyperlinked terms simply through using the website." J.A. 324 (quoting *Gordon v. Zeroed-In Tech., LLC*, No. 23-3284-BAH, 2025 WL 941365, at *9 (D. Md. Mar. 26, 2025)); *see also* Clifford Fisher et al., *Evolution of Clickwrap & Browsewrap Contracts*, 48 Rutgers Comput. & Tech. L.J. 147, 150 (2022) ("Browsewrap agreements are agreements that are legally binding simply by the user remaining on a website page."). The court held that a "browsewrap" agreement was at play here "because the plain language of the Terms establishes that users are bound to the Terms upon their visit to Resident Portal," and "[a]lthough users must click their assent to the Terms to submit a payment, by the time a user reaches the payment page, she is already bound to the Terms that existed at the time she initiated her visit to ResidentPortal." J.A. 324. Therefore, as a browsewrap agreement, the Terms bind users of ResidentPortal "simply through using the website." *Id.*

Next, the district court held that, pursuant to *Johnson*, in order "to preserve consideration despite a modification provision, Maryland law requires 'an advance notice requirement' that 'constrains the modifying party by giving the other side a chance to end the agreement before the change takes effect.'" J.A. 326 (quoting *Johnson*, 131 F.4th at

7

180–81).   Applying this rule, the district court reasoned that "[n]o part of the Terms *required* [Appellant] to give advance notice before a change became effective," because neither the Change Clause nor the Notices Clause require advanced notice of changes.   *Id.* (emphasis in original).   Instead, the court held, Appellant's "Terms allow the same form of 'post-hoc notice' . . . that the Fourth Circuit deemed insufficient [in *Johnson*] to preserve consideration because 'it places no constraint on [the modifying party's] ability to escape its contractual obligations whenever it sees fit.'"   *Id.* at 327 (quoting *Johnson*, 131 F.4th at 180).

Accordingly, the district court held:

> Indeed, under the Change Clause . . . and Notices Clause, when [Appellee] accessed ResidentPortal after [Appellant] updated its terms . . . she was bound to the updated version of the Terms the moment she accessed ResidentPortal . . . . Thus, she had no 'chance to end the contract before the change[s] took effect' . . . . Therefore, these clauses rendered illusory any mutual promise acting as consideration for the Terms and the Arbitration Provision.

J.A. 327 (quoting *Johnson*, 131 F.4th at 180–81).

Appellant timely appealed, arguing that the district court erred in denying the motion to stay proceedings and compel arbitration.   Appellant asserts that the "promise to arbitrate was not illusory because any discretion [Appellant] had to modify the agreement was not unlimited," as "any changes [Appellant] introduced to the Terms would not take effect until *after* [Appellee] returned to use [ResidentPortal] again," such that "[i]f [Appellee] never returned to the site, no changes could ever take effect."   Appellant's Opening Br. at 16 (emphasis in original).

8

We conclude that the district court did not err in denying Appellant's motion to stay proceedings and compel arbitration.

## II.

We review a district court's denial of a motion to compel arbitration de novo. *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025).

## III.

Pursuant to the Federal Arbitration Act ("FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). However, we have made clear that "[t]he presumption favoring arbitration does not apply to th[e] preliminary question of [an] Arbitration Agreement's validity." *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022). Accordingly, "[a] threshold question in every arbitration-related case is thus 'whether a valid arbitration agreement exists.'" *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)).

We resolve this question according to "ordinary state-law principles that govern the formation of contracts." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *First Options Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Johnson v. Cont'l Fin. Co.*, 131 F.4th 169, 178 (4th Cir. 2025) ("Whether an arbitration agreement was properly formed is 'a question of ordinary state contract law principles.'") (quoting

9

*Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 252, 258 (4th Cir. 2021)).

Here, the parties agree that Maryland contract law governs. The parties further agree that under Maryland law, "[t]he formation of a contract requires mutual assent (offer and acceptance), and agreement definite in its terms, and sufficient consideration." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. Am.*, 392 F.3d 114, 123 (4th Cir. 2004)); *see also Hill*, 412 F.3d at 543 ("Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract.") (citing *Cheek v. United Healthcare Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003)). Appellant, as the party seeking to compel arbitration, "bears the burden of establishing the existence of a binding contract to arbitrate." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 217 (4th Cir. 2024).

As explained above, Appellee challenges the formation of the Arbitration Provision by asserting that it lacked sufficient consideration under Maryland law. Specifically, she argues that while the Arbitration Provision was supported by a mutual promise to arbitrate, the Change Clause rendered that promise illusory because it allowed Appellant to unilaterally modify the Terms. Appellant counters that the Change Clause did not render illusory the mutual promise to arbitrate because changes to the Terms could not become binding until Appellee accepted them by visiting ResidentPortal. And if Appellee didn't want to agree to the changes, she could simply not visit the website.

The district court agreed with Appellee's position, concluding that the Change Clause and Notices Clause "rendered illusory any mutual promise acting as consideration for the Terms and the Arbitration Provision" because Appellee "had 'no chance to end the

10

contract before the change[s] took effect.'" J.A. 327 (quoting *Johnson*, 131 F.4th at 180–81). For the reasons explained below, we agree.

### A.

### The Agreement to Arbitrate is Illusory

The Supreme Court of Maryland has long held that "[a] promise becomes consideration for another promise only when it constitutes a binding obligation." *Cheek*, 835 A.2d at 661. Yet, "[u]nlike a binding obligation, an 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to [do] anything." *Hill*, 412 F.3d at 543 (quoting *Cheek*, 835 A.2d at 662); *Johnson*, 131 F.4th at 178 ("It is rudimentary contract law that an agreement lacks consideration, and is therefore never formed, when it consists entirely of illusory promises.") (citing Restatement (Second) of Contracts § 77).

In the context of an arbitration agreement, "[u]nder Maryland law, a promise to arbitrate is illusory -- and thus cannot constitute the consideration necessary to support a binding contract -- if [one party] reserves the right 'to alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice.'" *Coady*, 32 F.4th at 292 (quoting *Cheek*, 835 A.2d at 662). Here, the district court found that Appellant's Terms did exactly that, thereby "destroy[ing] the consideration supporting the Arbitration Provision such that no agreement to arbitrate was formed." J.A. 329. We agree. Appellant's Terms include a Change Clause that expressly gives it the unfettered discretion to unilaterally modify the arbitration agreement without any meaningful limitation.

The Change Clause here is precisely the type of modification clause that we have consistently held is illusory. As we recently noted in *Johnson*, when a contract contains a

11

modification or "change-in-terms" provision applicable to the contract as a whole, that provision applies to an arbitration provision contained in the same contract, unless otherwise stipulated by the terms.  131 F.4th at 179.  In this case, although the Change Clause appeared several pages before the Arbitration Provision, the language of the Change Clause referred broadly to the Terms as a whole, and thus plainly applied to the entire contract, including the Arbitration Provision.  *See* J.A. 90, 111, 131.

The Change Clause provided:

> At [ResidentPortal], [users] are bound by the version of this Agreement that is in effect on the date of [the user's] visit. This Agreement may change from time to time, so please review it when you visit [ResidentPortal].

*Id.*  Under a plain reading, a person who visits ResidentPortal is automatically bound by the Change Clause the *moment* ResidentPortal is accessed.  The fact that users must click the assent button as part of the user interface in order to make rental payments does not alter the fact that any user paying rent is already bound by any modified terms merely by visiting ResidentPortal in the first instance.

We have repeatedly held this type of "change in terms" clause to constitute an illusory promise under Maryland law.  For example, in *Coady*, we found illusory a clause that stipulated, "the employer has the right, *from time to time*, to make and enforce new policies or procedures and to enforce, change, abolish or modify existing policies, procedures or benefits applicable to employees as it may deem necessary with or without notice."  32 F.4th at 290 (emphasis supplied).  Like the clause at issue in *Coady*, the

12

language in the Change Clause here provides, "[t]his Agreement may change *from time to time*." J.A. 90, 111, 131 (emphasis supplied).

Yet, there is no language in the Change Clause here requiring Appellant to provide its users with notice before or even after modifying the terms. Rather, the only reference to notice in the Terms is found in the Notices Clause, which states that Appellant will provide "any notices regarding [ResidentPortal] by posting them on [ResidentPortal]" and instructs users that they "must check [ResidentPortal] for notices, and [users] will be considered to have received a notice when it is posted on [ResidentPortal]." J.A. 89, 110, 130. Notably, however, the Notices Clause does not include any language requiring Appellant to provide notice to its users for any modifications to the Terms -- a striking similarity to *Coady*. *See Coady*, 32 F.4th at 292–93 (holding that a modification clause reserving the party's ability to "change, abolish or modify existing policies, procedures or benefits applicable to employees as it may deem necessary with or *without notice*" created an illusory promise (emphasis supplied)). In fact, the Notices Clause here is vague as to when and for what reasons notices will be posted -- it simply says that "any notices regarding [ResidentPortal]" will be posted. J.A. 89, 110, 130.

Moreover, the Notices Clause is meaningless because it simply requires Appellant to provide "notice." *See Johnson*, 131 F.4th at 180 (recognizing that "[s]tanding alone, the term 'notice' is so broad and vague as to be meaningless"). In *Johnson*, we considered a credit card agreement containing a modification clause in which Continental, as the lender, reserved the right to change "any term of [the credit card] Agreement . . . in [its] sole discretion, upon such notice . . . required by law." *Id.* at 174. We found the clause to be

13

illusory because the "scant 'notice . . . required by law'" language did not constrain the modifying party in any meaningful way so as to "giv[e] the other side a chance to end the contract before the change takes effect." *Id.* at 181. We noted that in a previous instance when Continental amended the agreement, it provided "notice" only by posting an updated version of the agreement on its website. We deemed this type of "after-the-fact" or post-hoc ineffectual notice to be insufficient to preserve consideration because "[i]t places no constraint on [the modifying party's] ability to escape its contractual obligations whenever it sees fit." *Id.* at 180.

Appellant attempts to distinguish this case by noting that any modification to the Terms required Appellee to visit ResidentPortal. Appellant's Opening Br. at 29 ("[A]ny changes [Appellant] made to it[s] Terms could not become effective and bind the parties until [Appellee] used the ResidentPortal site again."). According to Appellant, if it "updated the Terms but [Appellee] opted to no longer use ResidentPortal at all, then [Appellant's] new Terms could *never* become effective with respect to its agreement and relationship with [Appellee]." *Id.* at 30 (emphasis in original). But "Maryland courts consistently strive to interpret contracts in accordance with common sense," and this argument defies common sense. *Credible Behavioral Health, Inc. v. Johnson*, 220 A.3d 303, 313 (Md. 2019) (internal quotation marks omitted). Recall that the Notices Clause states that any notices Appellant chooses to provide will be posted to ResidentPortal. But it also provides that the Terms automatically apply if and when Appellee visits ResidentPortal. So, there was no way for Appellee to receive notice of modifications or review them without automatically assenting to them. Therefore, the purported ability of

14

Appellee to opt out of accessing the website and thereby decline the modified terms is illusory because it exists solely at Appellant's pleasure.

Also problematic is that the sweeping grant of unilateral authority Appellant reserved in its Terms does not impose any kind of meaningful limitation on Appellant. *See Cheek*, 835 A.2d at 662 (providing that under Maryland law, an illusory promise is one that "do[es] not purport to put any limitation on the freedom of the alleged promisor") (quoting Corbin on Contracts § 5.28 (2003)). Instead, it is entirely in Appellant's discretion to modify the Terms, and the only restriction on that authority is Appellee's choice to access ResidentPortal to pay her rent -- which is no choice at all, as she is automatically bound by the version of the Terms posted the moment she accesses the website, even though at the time she accesses it, she would not know whether there is any posted notice of new Terms. Appellant thus "reserve[d] the right 'to alter, amend, modify, or revoke the Arbitration [Provision] . . . at any time with or without notice.'" *Coady*, 32 F.4th at 292 (quoting *Cheek*, 835 A.2d at 662). And that makes Appellant's promise illusory.

B.

The Parties Were Engaged in an Ongoing Service Relationship

Appellant contends that because users "do not have a continuing or term *contract*" with Appellant that can be "retroactively change[d]," the agreement to arbitrate is not illusory. Appellant's Response 28(j) letter (May 21, 2026) (emphasis in original). Instead, Appellant asserts that "each time [users] transact on ResidentPortal, they form a[] [new] agreement with [Appellant] that neither party can retroactively change -- [Appellant] can only change the Terms that apply to *future* transactions, which [users] can affirmatively

15

accept or decline and pay by check instead." *Id.* (emphasis in original). And thus, according to Appellant, its "inability to unilaterally renege on its promise to arbitrate disputes over *prior* transactions means the promise is not illusory." *Id.* (emphasis in original).

In other words, Appellant argues that each time Appellee accessed ResidentPortal and made a rental payment, she entered into a new and separate contract with Appellant as opposed to there being an ongoing service agreement between the parties. Again, we disagree.

Under Maryland law, courts "'construe the contract as a whole' and decline to 'read each clause or provision separately.'" *Johnson*, 131 F.4th at 179 (quoting *Coady*, 32 F.4th at 291). Here, the Terms at large contemplate an ongoing relationship between the parties. In particular, the language of the Change Clause suggests that the relationship between the parties is an ongoing one, rather than a "one-off" contract, and that Appellant intended for any modifications to expand upon their ongoing contractual relationship. Otherwise, the Change Clause would be superfluous.

The Change Clause provides that users of ResidentPortal "are bound by the *version of this Agreement* that is in effect on the date of [their] visit." J.A. 131 (emphasis supplied). The phrase, "version of this Agreement," reflects an ongoing service relationship between the parties. This is so because the term "version" is defined as "a particular form of something differing in certain respects from an earlier form, or other forms *of the same type of thing*." *Version*, Oxford Am. Dictionary (3d ed. 2010) (emphasis supplied). This

16

definition reflects the understanding that the parties had a continuous agreement that could be modified to create later versions of that same agreement.

Even more telling is the inclusion of the Change Clause in the first place. As noted, the Change Clause provided, "[t]his Agreement may change from time to time." J.A. 131. If, as Appellant contends, a new contract is created each time Appellee accesses ResidentPortal or clicks the "accept" button relative to the Terms on the rent payment page, then there would be no need for a clause allowing for modifications to the agreement. Rather, including language in the Terms allowing for changes to "[t]his Agreement," reflects an understanding that the parties are engaged in an ongoing service agreement. The language in the Terms bears this out and reflects the parties' intent to continually engage in an ongoing relationship. *See, e.g.*, *id.* at 141 (providing that pursuant to the Arbitration Provision, "[a]ny controversy or claim arising out of or relating to the use of the services on [ResidentPortal], the relationship resulting from the use of such services . . . will be settled by Arbitration"); *id.* at 135 (contemplating billing over multiple transactions by authorizing Appellant to "initiate transaction entries, including any convenience fees noted herein, to your transaction account number . . . [t]his billing will occur at the time of payment of each transaction"); *id.* at 142 (requesting users to maintain updated personally identifiable information with Appellant); *id.* at 135 (granting Appellant the right to "amend th[e] convenience fee at any time with or without notice"); *id.* at 131 (stating, "[Appellant] reserves the right to suspend or deny, in its sole discretion, your access to all or any portion of [ResidentPortal] with or without notice.").

17

Finally, we note that, on appeal, Appellant attempts to rely on a version of the Terms that post-dates the majority of the payments at issue. In our view, this attempt also indicates a continuing relationship. Appellee made rent payments on July 6, August 2, and August 21 in 2023, and on February 21, July 1, and July 11 in 2024. The record on appeal includes three versions of the Terms: (1) "between May 10, 2023 and April 23, 2024;" (2) "between April 24, 2024 and October 15, 2024;" and (3) "after October 16, 2024." Appellant's Opening Br. at 8; J.A. 88, 109, 129. The version of the Terms effective between May 10, 2023, and April 23, 2024, applies to the four payments made from July 2023 to February 2024. The remaining two payments made in July 2024 fall within the parameters of the version of the Terms effective between April 24, 2024, and October 15, 2024. The sections of the Terms relevant to this appeal -- the Arbitration Provision, Change Clause, and the Notices Clause -- are identical in each version of the Terms that were in effect at the time of Appellee's transactions. The version of the agreement effective after October 16, 2024, is inapplicable here as it post-dates all of Appellee's payments.

Yet, in its motion to compel before the district court, Appellant relied on the October 16, 2024, version of the Terms. And now on appeal, Appellant cites to the April 24, 2024–October 15, 2024, version of the Terms. But as noted, only two of Appellee's six rental payments fall within that time period. Appellant contends that it is citing to this version of the Terms now because "[t]he sections of the Terms relevant to this appeal . . . are identical in each version that was in effect at the time of [Appellee's] transactions." Appellant's Opening Br. at 21. While that may be true, Appellant's reliance on versions of the Terms

18

that post-date the majority of the payments at issue reflect Appellant's understanding that these Terms are part of an ongoing service agreement between the parties.

C.

No Agreement to Arbitrate Was Formed

In summary, "[t]here is no question that the digital age has changed the nature of contract formation." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024) (quoting *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 260 (4th Cir. 2021)). However, "[t]he fundamental principles of contract law continue to apply." *Id.* "It is rudimentary contract law that an agreement lacks consideration, and is therefore never formed, when it consists entirely of illusory promises." *Johnson v. Continental Fin. Co.*, 131 F.4th 169, 178 (4th Cir. 2025). With these principles in mind, we readily conclude that because the Terms here "allow[ed] [Appellant] to escape all of its contractual obligations at will" and did not provide Appellee with effective notice of any modifications, the agreement to arbitrate here is precisely the type of promise we have previously found to be illusory under Maryland law. *Id.* at 179.

Accordingly, we affirm the district court's denial of the motion to compel arbitration.

IV.

For the foregoing reasons, the district court's judgment is

*AFFIRMED*.

19

RUSHING, Circuit Judge, dissenting:

The majority holds that the arbitration agreement in Entrata's ResidentPortal Terms and Conditions is illusory because the "Change Clause" in Section 3 of the Terms "gives [Entrata] the unfettered discretion to unilaterally modify the arbitration agreement without any meaningful limitation." Maj. Op. 11. For two primary reasons, I disagree. First, the majority misreads Section 3. Though that section allows Entrata to modify the parties' arbitration agreement, any modifications apply only prospectively. The arbitration agreement is therefore not illusory. Second, even accepting the majority's reading that Section 3 allows retroactive modifications, the arbitration agreement is still not illusory because any modifications become binding only once a customer revisits ResidentPortal. Because it is the customer—not Entrata—who controls whether any modifications to the arbitration agreement become binding, the arbitration agreement is not illusory.

I.

To begin, the majority errs in finding that Section 3 allows Entrata to modify the arbitration agreement with retroactive effect. Because Section 3 does not allow retroactive changes and instead provides that the version of the Terms in effect on a particular visit continues to govern that visit despite any future changes to the Terms, the arbitration agreement in the Terms is not illusory.

"Maryland follows the law of objective contract interpretation." *Sy-Lene of Wash., Inc. v. Starwood Urb. Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). "Under this approach, the primary goal of contract interpretation is to ascertain the intent of the parties in entering the agreement and to interpret the contract in a manner consistent with [that] intent."

20

*Credible Behavioral Health, Inc. v. Johnson*, 220 A.3d 303, 310 (Md. 2019) (internal quotation marks omitted). The "primary consideration, when interpreting a contract's terms, is the 'customary, ordinary, and accepted meaning' of the language used." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 469 (Md. 2004) (quoting *Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 595 A.2d 469, 475 (Md. 1991)). A contract's terms must also be interpreted "in context, looking at 'the entire language of the agreement, not merely a portion thereof.'" *Bainbridge St. Elmo Bethesda Apts., LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 164 A.3d 978, 984 (Md. 2017) (quoting *Jones v. Hubbard*, 740 A.2d 1004, 1016 (Md. 1999)). When interpreting contractual provisions, the overall question is "what a reasonable person in the position of the parties would have understood the language to mean." *Credible Behavioral Health*, 220 A.3d at 310.

"A promise becomes consideration only when it constitutes a binding obligation." *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003). "Without a binding legal obligation, sufficient consideration does not exist to support a legally enforceable agreement." *Id.* "An 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything." *Id.* at 662. Relevant here, "'[w]ords of promise which by their terms make performance entirely optional with the "promisor" whatever may happen, or whatever course of conduct in other respects he may pursue,'" constitute an illusory promise. *Id.* (quoting Restatement of Contracts (Second) § 2 cmt. e).

21

This case turns on Section 3 of the Terms.  In full, that section provides:

> At the Site [ResidentPortal], you are bound by the version of this Agreement that is in effect on the date of your visit.  This Agreement may change from time to time, so please review it when you visit the Site.

J.A. 111.[1]  The majority zeroes in on the phrase "[t]his Agreement may change from time to time," Maj. Op. 12–13, 17, and holds that Section 3 gives Entrata a "sweeping grant of unilateral authority" to modify the arbitration agreement retroactively, all without "any kind of meaningful limitation" on Entrata, *id.* at 15.  In my view, the majority misreads Section 3.

The first sentence of Section 3 imposes a meaningful limit on Entrata's ability to modify the arbitration agreement.  By stating "you are bound by the version of this Agreement that is in effect on the date of your visit," Section 3 makes clear that the version of the Terms in effect on the date of a customer's visit is the one that governs that visit and any transactions or other dealings occurring during that visit, regardless of any subsequent changes to the Terms.  J.A. 111.  In other words, no matter what changes Entrata makes to the Terms in the future, the "version of th[e] Agreement . . . in effect on the date of [the] visit" in question continues to govern all transactions occurring during, or disputes arising

---

[1] Contrary to the majority's assertion, Entrata's choice to cite only one version of the Terms in its briefs to this Court does not reveal anything about Entrata's "understanding" of how the Terms work.  Maj. Op. 18–19.  It is clear that Entrata's choice to cite only one version of the Terms was a choice made for convenience, both for the parties and for the Court.  All versions of the Terms in the record are identical in all relevant respects, so it would be useless to string cite multiple versions of the Terms when citing only one version would achieve the same result.  I would not hold Entrata's non-substantive citation choices against it.

from, that visit. J.A. 111. Entrata cannot thereafter unilaterally "alter, amend, modify, or revoke" the promises made in that version of the Terms as they apply to that specific visit, and the majority points to nothing in Section 3 or any other section of the Terms stating otherwise. *Cf. Cheek*, 835 A.2d at 663 (internal quotation marks omitted).

The majority suggests that, if this reading were correct, there would be no reason for Section 3 to include the second sentence letting customers know that "[t]his Agreement may change from time to time." J.A. 111; *see* Maj. Op. 17. I disagree. Nothing about the second sentence in Section 3 suggests that Entrata retains the ability to *retroactively* modify any of the Terms. The second sentence notifies customers that the Terms that apply to today's transactions might not be the same as the Terms that will apply to future transactions. That is, the sentence gives customers notice that the Terms may change (even if not in a way that will affect already consummated transactions) and advises customers to "review [the Terms] when checking the Site." J.A. 111. All the second sentence does is give customers more information. It does not open the door to retroactive changes.

The best reading of Section 3 is that the version of the Terms in effect on the date of a customer's visit to ResidentPortal governs that visit and all transactions or other dealings occurring during that visit, regardless of any future changes Entrata makes to the Terms. As applied here, once a customer agrees to arbitrate during a visit to ResidentPortal, Entrata has no power to "alter, amend, modify, or revoke" the promises made in that version of the arbitration agreement when it comes to disputes arising from transactions or other dealings occurring during that visit. *Cf. Cheek*, 835 A.2d at 663 (internal quotation marks omitted). Instead, Entrata is "bound by" the promises made. J.A. 111. Because

23

there is a "binding obligation on [Entrata] to submit to arbitration," the arbitration agreement is not illusory. *Holloman v. Cir. City Stores, Inc.*, 894 A.2d 547, 554 (Md. 2006).

## II.

Even accepting the majority's reading that Section 3 allows Entrata to modify the Terms with retroactive effect, however, the majority still errs in finding that the arbitration agreement is illusory. The Supreme Court of Maryland has explained that it is only where the promisor's freedom in deciding whether to perform "is *unlimited* that his promise becomes illusory and incapable of forming part of a legal obligation." *Stamatiades v. Merit Music Serv., Inc.*, 124 A.2d 829, 838 (Md. 1956) (emphasis added and internal quotation marks omitted). To be illusory, the alleged promise must "promise *nothing*" and not "put *any limitation* on the freedom of the alleged promisor." *Cheek*, 835 A.2d at 662 (emphases added and internal quotation marks omitted). The promisor must "retain[] an *unlimited* right to decide later the nature or extent of his performance." *Id.* (emphasis added and internal quotation marks omitted). If, on the other hand, the promisor "is irrevocably bound for any appreciable time" by the promise, the promise is not illusory. *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 673 (Md. 2009) (internal quotation marks omitted).

The majority holds—and for purposes of this argument, I agree—that any modifications to the Terms become binding only once a customer revisits ResidentPortal. *See* Maj. Op. 12 ("Under a plain reading [of Section 3], a person who visits ResidentPortal is automatically bound by the Change Clause the *moment* ResidentPortal is accessed."); *id.*

24

at 14 ("[T]he Terms automatically apply if and when [a customer] visits ResidentPortal."). In other words, a customer could visit ResidentPortal today and accept the Terms, and Entrata could change the Terms tomorrow, but any changes would not be binding on the customer until she visits ResidentPortal again after the changes are made. So long as she does not visit ResidentPortal a second time, the version of the Terms the customer initially accepts remains binding. *See id.* at 15 (conceding that Entrata's ability to modify the Terms is subject to a "restriction" in the form of a customer's "choice to access ResidentPortal to pay her rent").

The fact that Entrata is bound by the original Terms unless and until the customer revisits ResidentPortal means that the Terms—including the arbitration agreement—are not illusory. Under such circumstances, Entrata's right to decide the nature or extent of its performance is not "unlimited." *Cheek*, 835 A.2d at 662 (internal quotation marks omitted); *see Stamatiades*, 124 A.2d at 838. Nor is Entrata's "future action subject to [Entrata's] own future whim." *Cheek*, 835 A.2d at 662 (internal quotation marks omitted). Instead, Entrata must perform according to the Terms as accepted by the customer, and only the customer—here, Trimble—can make any modifications to the Terms binding by revisiting ResidentPortal. *See Cristales v. Scion Grp. LLC*, 478 F. Supp. 3d 845, 856 (D. Ariz. 2020) (finding these exact Terms not illusory under Utah law because "the modification clause does not permit Entrata . . . to make any revisions to the Terms entirely on [its] own"). Of course, Entrata's duty to perform may not last forever; once the customer revisits ResidentPortal, Entrata is free to retroactively modify the Terms, at least under the majority's reading of Section 3. But by that point, Entrata will have already been bound

25

by the original version of the Terms for as long as the customer stays off ResidentPortal. And under Maryland law, Entrata need only be "bound for *any appreciable time*" for the Terms and the arbitration agreement not to be illusory. *Questar*, 978 A.2d at 673 (emphasis added and internal quotation marks omitted).

The majority recognizes that a customer's "choice to access ResidentPortal to pay her rent" operates as a "restriction" on Entrata's "discretion to modify the Terms." Maj. Op. 15. But the majority nevertheless says the "restriction" is not enough because (1) the Terms do not require advance notice of modifications, and (2) customers cannot review any modified Terms before accessing ResidentPortal and automatically being bound by them. Neither of these facts, however, leads to the conclusion that the Terms are illusory.

First, neither the majority nor Trimble cites any case holding that, as a matter of Maryland law, advance notice of modifications is always required to save a promise that is subject to future modifications from being illusory. As noted above, and as relevant here, whether a promise is illusory turns on whether the "promisor retains an *unlimited* right to decide later the nature or extent of his performance." *Cheek*, 835 A.2d at 662 (emphasis added and internal quotation marks omitted); *see Stamatiades*, 124 A.2d at 838 ("It is only where the option reserved to the promisor is unlimited that his promise becomes illusory . . . ."). A promisor's guarantee of advance notice of modifications, coupled with the promisee's ability to opt out in the event he disagrees with the modifications, is one way to restrain a promisor's freedom to renege on a promise. *See, e.g.*, *Johnson v. Cont'l Fin. Co.*, 131 F.4th 169, 180–181 (4th Cir. 2025). But again, the majority cites no case holding that advance notice is the *only* way to adequately restrain a promisor's freedom. And

26

Maryland case law strongly suggests it is not. *See Questar*, 978 A.2d at 671–673 (finding contract not illusory even though contract did not require advance notice of termination); *Stamatiades*, 124 A.2d at 838 (similar).

The Maryland Supreme Court's decision in *Cheek*, 835 A.2d 656, and this Court's decisions in *Johnson*, 131 F.4th 169, and *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288 (4th Cir. 2022), do not say otherwise. In each of those cases, the contracts at issue allowed one party to modify the contracts' terms unilaterally and retroactively. And crucially, any modifications became effective immediately after they were made. *See Cheek*, 835 A.2d at 658; *Johnson*, 131 F.4th at 174; *Coady*, 32 F.4th at 290. In finding that the contracts were illusory, the Maryland Supreme Court and this Court emphasized the need for advance notice of any modifications because there were no other restraints on the promisors' freedom to determine the nature or extent of their own performance. *Cheek*, 835 A.2d at 663; *see Johnson*, 131 F.4th at 180; *Coady*, 32 F.4th at 292–293. Once the modifications were made, they were binding. The difference here, however, is that there *is* a restraint on Entrata's ability to modify the Terms: A customer must revisit ResidentPortal for the modified Terms to take effect. And whether a customer does so is up to the customer herself. That is enough to save the Terms from being illusory. Entrata need not point to an additional notice requirement.

Second, customers' inability to review any modifications before visiting ResidentPortal and becoming bound by the modified Terms likewise does not show that the Terms are illusory. As already explained, the fact that Entrata is bound by the original version of the Terms between the time the customer accepts them and the time the customer

27

revisits ResidentPortal means the Terms are not illusory.  *See Questar*, 978 A.2d at 673 (explaining that the promisor need only be "bound for any appreciable time" for a promise not to be illusory (internal quotation marks omitted)).  Indeed, the majority concedes that this is a "restriction" on Entrata's "discretion to modify the Terms."  Maj. Op. 15.  The majority states that "the purported ability of [customers] to opt out of accessing the website and thereby decline the modified [T]erms . . . exists solely at [Entrata's] pleasure."  *Id.* at 14–15.  But it is hard to see how that's true.  Nothing requires customers to revisit ResidentPortal.  And Section 3 puts customers on notice that the Terms "may change from time to time," J.A. 111, so if customers want to avoid being bound by any modifications to the Terms, all they have to do is stay off ResidentPortal.  It may be unfair that customers must visit ResidentPortal to view any modified Terms, at which point they are already bound by those Terms.  But unfairness is not the same as a lack of consideration.  Instead, the dispositive point is that customers are free to stay off ResidentPortal and thereby bind Entrata to the Terms as originally accepted.  The Terms are therefore not illusory.

### III.

I would reverse the district court's order denying Entrata's motion to compel arbitration.  Section 3 of the Terms does not allow Entrata to modify the arbitration agreement with retroactive effect.  And even if it did, the arbitration agreement still would

28

not be illusory because any modified Terms take effect only once the customer chooses to

revisit ResidentPortal.  Because the majority holds otherwise, I respectfully dissent.[2]

---

[2] Because I would reverse for the reasons given above, I do not address Entrata's additional argument that the Terms are not illusory because Entrata's "discretion" to modify the Terms "is subject to the general rule that 'a party with discretion is limited to exercising that discretion in good faith and in accordance with fair dealing.'"  Opening Br. 37 (quoting *Questar*, 978 A.2d at 670); *see id.* at 36–40.  The majority does not address this argument either, but it would seem to me that the majority must reject this argument in order to affirm.